SORENSEN ET AL. *v.* J. H. LAWRENCE COMPANY

[No. 97, October Term, 1950.]

*Decided March 15, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Nathan Patz*, with whom was *Jack L. Grossman* on the brief, for appellants.

*W. Hamilton Whiteford*, with whom were *Due, Nickerson & Whiteford* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought in the Circuit Court No. 2 of Baltimore City by Margaret J. Sorensen, owner of the lot improved by a two-story brick building at 2600½ Huntingdon Avenue and by the tenants of the property to obtain a declaratory decree defining the rights of complainants and the adjoining property owner, J. H. Lawrence Company, defendant, under a party wall agreement, and an injunction to restrain defendant from increasing the height of the party wall and to require defendant to restore it to its original condition.

The bill of complaint, which was filed in July, 1949, alleged: (1) that under the terms of the agreement entered into by previous owners of the properties on August 6, 1926, defendant has no right to increase the height of the wall; (2) that, although Mrs. Sorensen's building has two stories, the party wall had been only one story prior to July, 1949, when defendant added the second story to its building at 2600 Huntingdon Avenue, using the party wall as a supporting wall; and (3) that Mrs. Sorensen notified defendant that such use violated her rights, and requested it to restore the wall to its former condition. Defendant, a Maryland corporation engaged in the plumbing business, denied in its answer that it was violating any of the rights of complainants.

In August, 1949, the Court ordered complainants to file a bond to indemnify defendant against any damages it might sustain as a result of the cessation of its

building activities in the event of a decision in favor of defendant. When complainants failed to furnish the bond required, the Court dismissed the bill. On February 10, 1950, the Court of Appeals reversed the orders appealed from and remanded the case for further proceedings, as there was no request for a preliminary injunction, and the Court had no authority to require a bond as a prerequisite for a hearing of the case upon its merits. *Sorensen v. J. H. Lawrence Co.,* 194 Md. 546, 71 A. 2d 292.

At the trial of the case the party wall agreement was offered in evidence along with photographs and other exhibits. The agreement was executed by Joseph Hoffman and wife, owners of the property now owned by Mrs. Sorensen, and William Marsch, owner of the corner lot now owned by defendant. The agreement was entered into after Marsch had erected a one-story building on his lot, and the Hoffmans complained to him that the north wall of his building encroached over the north line of his lot. The agreement recities that the wall was erected partly on land belonging to the parties of the first part. It then recites that in consideration of the premises, the sum of one dollar and other valuable considerations "it is agreed between the parties hereto that the said wall so erected shall be and remain forever hereafter as now erected a party wall for the joint use, benefit and advantage of the parties hereto, their heirs and assigns, provided that no joist or other support of any kind or any building device that may be employed shall penetrate beyond the center line of said wall."

One of the witnesses at the trial of the case was Joseph Hoffman, Mrs. Sorensen's predecessor in title, who is now residing in Philadelphia. Hoffman testified that in the dispute which he had with Marsch about 25 years ago he was represented by counsel and that Marsch also was represented by counsel.

After consideration of the agreement and other evidence in the case, the chancellor entered a decree (1) declaring that the agreement created a party wall with

no restriction as to height, and accordingly that defendant, as successor in title to one of the contracting parties, had the right to increase the height of the wall to support the second story of its building, and (2) denying the prayer for prohibitory and mandatory injunction. Complainants appealed here from that decree.

A party wall is a division wall between two connected and mutually supporting buildings, either both actually erected or one contemplated, of different owners, usually, but not necessarily, standing half on the land of each and maintained at mutual cost, and with the right of each owner to insert his timbers therein. *Brown v. Werner,* 40 Md. 15, 19; *Carroll Blake Construction Co. v. Boyle,* 140 Tenn. 166, 203 S. W. 945. At common law no person was under obligation to unite with his neighbor in building a party wall, but a wall could be made a party wall by agreement; or if one person allowed another to make use of his wall for the support of a building, and to continue the use for twenty years, the grant of a right to do so was presumed, and the wall became a party wall by prescription.

In commenting on the law of party walls in America, Judge Cooley said: "The inconveniences of the common law rule have been obviated to some extent by statutes which permit a proprietor to build into his neighbor's wall for the support of his own building, provided the wall is sufficient for the purpose, on making payment of the just proportion of the cost. These statutes establish the rule of the civil law. * * * Where a party wall exists, each proprietor has an easement in the land of the other for its use, repair and support; but the extent of his rights may be limited by the contract between them with respect to the wall, or by the user or the statute under which it was built or is owned." 2 Cooley, Torts, 3d Ed., 749, 750.

As a party wall is intended for the mutual benefit of the owners of the buildings which it separates, there is no implied restriction upon the right of either owner of such a wall to use it as he would use his several wall,

except that he must not cause detriment to the other owner; on the contrary, it will be presumed that each joint owner intended the wall to be used for all the purposes for which the wall of his building would ordinarily and properly be used. We have adopted the generally accepted rule that, unless restricted by statute or agreement, either owner of a party wall may, without the consent of the other, increase the height of the wall, if the increase does not impair the strength of the wall and injure the property of the other owner. *Barry v. Edlavitch,* 84 Md. 95, 114, 35 A. 170, 33 L. R. A. 294; *Dorsey v. Habersack,* 84 Md. 117, 35 A. 96; *Walker v. Stetson,* 162 Mass. 86, 38 N. E. 18; *Brooks v. Curtis,* 50 N. Y. 639, 10 Am. Rep. 545; *Negus v. Becker,* 143 N. Y. 303, 38 N. E. 290, 25 L. R. A. 667.

It is conceded that the right to increase the width, length or height of a party wall may be fixed by agreement, and that provisions of the agreement determine the rights of the parties. The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. The court, in interpreting a contract, considers the language employed, the subject matter, and the surrounding circumstances, and places itself in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them and to judge of the meaning of the words and the correct application of the language to the things described. *Milske v. Steiner Mantel Co.,* 103 Md. 235, 63 A. 471, 5 L. R. A., N. S., 1105; *Arundel Realty Co. v. Maryland Electric Rys. Co.,* 116 Md. 257, 261, 81 A. 787, 38 L. R. A., N. S., 157. Ambiguous words or phrases in a party wall agreement, as in any other contract, should be given a reasonable interpretation to effectuate the intention of the parties. *W. B. Saunders Co. v. Ducker,* 116 Md. 474, 479, 82 A. 154; *Davidson Chemical Co. v. Baugh Chemical Co.,* 133 Md. 203, 104 A. 404, 3 A. L. R. 1; *Moran v. Prather,* 23 Wall. 492, 23 L. Ed. 121, 123.

Public policy favors the presumption that either owner of a party wall under an agreement has the right to make the wall higher than it was built originally. As we said in *Norris v. Williams*, 189 Md. 73, 76, 54 A. 2d 331, 4 A. L. R. 2d 1106, restrictions upon the use of land are in derogation of the natural right which an owner possesses to use and enjoy his property, and are repugnant to trade and commerce. Hence, covenants alleged to be restrictive of the use of land are construed strictly against their establishment and effect, and liberally in favor of the unrestricted use of the land. In applying this doctrine to party walls in Massachusetts, Judge Allen said: "It is presumed to be a detriment to the owner of a building to deprive him of the power to make additions to it, and grants and contracts will be construed on that presumption, unless it is controlled by their terms. Not only would a provision implied in a grant of a party-wall, that it should not be carried higher than as originally constructed, be contrary to the interests and the apparent intention of the parties, but it would not be in accordance with public policy. The public interest is not promoted by putting impediments in the way of erecting buildings, and the law will not be swift to construe the acts of parties so as to produce that effect." *Everett v. Edwards*, 149 Mass. 588, 22 N. E. 52, 53, 5 L. R. A. 110.

The agreement in this case is quite different from that in *Miller v. Stuart*, 107 Md. 23, 31, 68 A. 273, where the owners of a building granted to the owners of an adjoining lot the right to use a wall for the purpose of inserting girders to a designated height. In that case the Court held that the agreement did not authorize the grantees to make the wall higher so as to serve as one of the enclosures of a building larger than that of the grantors. The agreement granted only two specified privileges: (1) to insert girders into the wall of a certain size, and (2) to use the wall as one enclosure of the building then to be erected. The Court pointed out that the agreement did not even use any term such

as "party wall," from which an intention to give the grantees the right to build upon the wall could be inferred.

Complainants relied chiefly on two decisions of the Supreme Court of California. In the first case, *Frowenfeld v. Casey*, 139 Cal. 421, 73 P. 152, there were three agreements, the last of which provided that each owner should have a six-story building. The Court recognized the rule that an agreement to build a party wall, without limitation as to height, would give either owner the right by implication to build it as high as would be necessary for the purposes for which it was to be used, if it could be done without injury or danger to the property of the other owner. But the Court explained that the extent of the easement for the purpose of the party wall in that case was measured by the agreements, and hence there was no right by implication to build the wall any higher. In the second case, *Henne v. Lankershim*, 146 Cal. 70, 79 P. 591, the agreement provided for the construction of a five-story party wall. The Court found that, since the agreement definitely limited the height of the party wall to five stories, one of the owners was thereafter precluded from raising it against the protest of the other. The agreements in the California cases are clearly distinguishable from the agreement in the case before us. In this agreement there is no provision specifying the height of the party wall.

We cannot interpret the clause that "the said wall so erected shall be and remain forever hereafter as now erected a party wall" to mean that the owner of the corner property is prohibited from increasing the height of the wall. We interpret this language to mean that the wall shall permanently remain a party wall where it was built in 1926, even though it may not be exactly on the line between the two properties. Hoffman, who objected to the location of the north wall of the corner building and executed the agreement now before us, testified that his attorney, Harry M. Benzinger, now deceased, prepared the agreement. It is reasonable to

believe that if it had been the intention of the parties to restrict the height of the party wall for the corner building to one story, Mr. Benzinger, a capable member of the Baltimore bar, would have expressly stated that intention in the agreement. Indeed, it is not reasonable to believe that the owner of the corner lot in a developing section of Baltimore intended to place a restriction upon his property as claimed by complainants. Where the language of a contract is open to an interpretation which is reasonable and in accordance with the general purpose of the parties, the hardship of a different interpretation is strong ground for belief that such a meaning was not intended.

We are informed that defendant has already added the second story to its building. We find nothing in the agreement that precluded defendant from increasing the height of the party wall as a support for the second. story.

*Decree affirmed, with costs.*